

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

State Board of Education
Austin, Texas

Dear Sirs:

Opinion No. O-3939
Re: Assignment of textbook
contracts.

We have received your letter of recent date in which you ask the opinion of this department on the following question:

> May the Board of Education approve the
> assignment of a textbook contract and keep
> the bond of the original contracting publish-
> er in force and effect after such assignment?

We are informed that the contracts were entered into between the "A" Publishing Company and the Board of Education on November 12, 1935, November 1, 1937, November 1, 1938, and November 1, 1939. In August, 1941, "A" Publishing Company assigned its rights under these contracts to "B" Publishing Company.

The statutes provide in detail the methods for the purchase and distribution of textbooks. See Articles 2839-2876j, V.A.C.S., inc. Although the Textbook Commission was abolished by Act of the Legislature, its statutory duties were expressly delegated to the Board of Education. (Article 2675b-5, V.A.C.S.; Acts 1929, 41st Leg., 2nd C.S., ch. 10, Sec. 5, p. 12). Therefore, the statutes governing the purchase of textbooks are equally applicable to and binding upon the State Board of Education.

Notably absent from the statutes governing the purchase of textbooks is any provision relative to the assignment of contracts. The Legislature meticulously outlined the steps to be taken by the Text Commission (now, the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Board of Education) in the purchase of textbooks and the award of contracts. The omission of any provision regarding the assignment of contracts would clearly indicate that the Textbook Commission had no authority or power either to permit or approve such assignments.

In Texas Jurisprudence, Volume 34, pages 440-441, it is said:

"Public officers and governmental and administrative boards possess only such powers as are expressly conferred upon them by law or are necessary implied from the powers so conferred. They cannot legally perform acts not authorized by existing law. . . ."

But even aside from the principle announced above, we are convinced from a reading of statutes that it was clearly the Legislative intent that the Board of Education should have no such authority.

Article 2846 provides that when there is to be a meeting for the selection of textbooks public notice shall be given of the meeting and that written notice shall be given to all persons or firms who request the same. Provision is made for the deposit of samples by those who wish to bid on the books; each such sample shall have the price printed or stamped therein. Provision is also made for bids and cash deposits.

Article 2847 provides for the filing of bids and also for the filing of an affidavit to be executed by the individual bidder or a member of the firm or the president and secretary of the corporation bidding. The affidavit shall contain various statements, among which are that no member of the Commission is in any way interested in such individual, firm or corporation bidding; the names of any and all persons who may have at any time during the preceding year received, either directly or indirectly, any money or other thing of value from said company for services rendered the State; the names of all the people employed to act for such bidder, directly or indirectly, in any way whatsoever in securing the contract or in the preparation of its bids, .etc. The statements made in the affidavit are declared to be warranties, and "if found to be untrue, shall subject the contract to forfeiture and authorize a recovery on the

bond to the full amount thereof, as liquidated damages, unless
it be shown that such mis-statement or non-disclosure of fact
was unintentional or an oversight on the part of said publish-
er."

Provision is made that the maximum price for the
books under the contract shall not exceed the minimum price
at which the publisher sells the books in wholesale quanti-
ties, and that a contract providing for a higher price shall
be void. (Article 2852) Provision is made that no books shall
be purchased from anyone connected with a trust and that the
bidder shall file an affidavit stating that he is not connect-
ed directly or indirectly with a trust. (Article 2853)

These and other statutory provisions are clearly
indicative of the Legislative intent that the Board of Educa-
tion should have no authority to permit or approve assign-
ments of textbook contracts. These safeguards were put in
the statutes for the benefit of the State of Texas and its
citizens, to secure for school children the best books at a
fair price, to assure the people that they would get full value
for their tax money, and to eliminate the possibility of fraud
and deception. These same safeguards could be entirely avert-
ed if the assignment of textbooks contracts could be made.
Surely this was not intended by the Legislature.

In view of the foregoing, it is the considered opin-
ion of this department that assignments of textbook contracts,
awarded under the provisions of Chapter 16 of the Revised
Civil Statutes of Texas, may not be approved by the Board of
Education.

We do not mean to hold in this opinion that the pub-
lisher to whom the contract was awarded may not make a bona
fide agreement with another publisher to the effect that the
second publisher will furnish the books called for the State
contract, and also comply with the other provisions of the
contract. This is purely a private matter with which the
Board of Education has nothing to do. However, the original
contracting publisher would be liable on his bond for the per-
formance of the contract. The indemnification of the pub-
lisher if the second publisher fails to live up to the terms
of their agreement is a matter for the two publishers to work
out between themselves.

We will answer your question specifically as follows: The Board of Education has no authority to approve an assignment of a textbook contract. However, the matter of the original contracting publisher making a contract with a second publisher as mentioned above is a private matter over which the Board of Education has no jurisdiction or authority. In any event the original contracting party would be liable on his bond.

We trust that this opinion satisfactorily answers the question in which you are interested.

Yours very truly

APPROVED SEPT. 20, 1941        ATTORNEY GENERAL OF TEXAS

/s/ Grover Sellers

By

FIRST ASSISTANT                . /s/ Glenn R. Lewis
ATTORNEY GENERAL                    Assistant

By

George W. Sparks

GWS:db

APPROVED OPINION COMMITTEE BY BWB CHAIRMAN